# IN THE SUPREME COURT OF IOWA

No. 108/ 06–0430

Filed February 8, 2008

**STATE OF IOWA**,

     Appellee,

vs.

**PUBLIC EMPLOYMENT RELATIONS BOARD**,

     Appellant,

and

AFSCME IOWA COUNCIL 61,

     Intervenor.

---

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

State agency appeals district court's ruling on judicial review reversing agency's order that required State to disclose information requested by intervenor. **AFFIRMED.**

Jan V. Berry, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Robert K. Porter, Assistant Attorney General, for appellee.

**TERNUS, Chief Justice.**

The appellant, Public Employment Relations Board (PERB), ordered the State to produce documents requested by the intervenor union, AFSCME Iowa Council 61, for use in several employee grievance proceedings. The State sought judicial review, claiming PERB's order exceeded the authority granted to it under Iowa Code chapter 20 (2001) because the State's failure to disclose the documents was not a willful violation of that statute. The district court agreed, ruling PERB could not provide relief to the union unless PERB found a willful violation.

On appeal to this court, PERB contends it has statutory authority to remedy nonwillful, as well as willful, violations of chapter 20. After considering the arguments of the parties and relevant authorities, we agree with the district court that PERB exceeded its authority. Therefore, we affirm the district court's reversal of PERB's order.

## I. Background Facts and Proceedings.

This appeal had its genesis in the State's discipline of bargaining unit employees represented by the union. In the summer of 2002, these employees were disciplined for inappropriate email usage. The employees then pursued the grievance procedure outlined in the collective bargaining agreement, which eventually led to binding arbitration. In preparation for the arbitration hearings, the union asked the State to produce records of discipline imposed on management employees for similar misconduct. The State refused to produce these records, claiming they were confidential.

Shortly thereafter, the union filed two prohibited practice complaints with PERB. In these complaints, the union asserted the State had violated Iowa Code section 20.10(2)(*a*), (*b*), and (*f*) in refusing to produce the requested documents in the grievance process. An

evidentiary hearing was held on these complaints before an administrative law judge (ALJ).

While the parties were awaiting a decision from the ALJ, the union served a *subpoena duces tecum* in one of the grievance proceedings, requesting various documents regarding the investigation and discipline of all State employees for email usage in July of 2002. The State filed a motion to quash, which was sustained in part and overruled in part by an arbitrator on September 8, 2003.

Shortly after the arbitrator quashed, in part, the union's subpoena, the ALJ issued a proposed decision on the union's prohibited practice complaints. The ALJ concluded the State's refusal to produce the requested documents violated its "statutory duty to bargain in good faith" under section 20.9. Although not cited by the union in its complaints, section 20.10(1) makes it a prohibited practice "to *willfully* refuse to negotiate in good faith with respect to the scope of negotiations defined in section 20.9." Iowa Code § 20.10(1) (emphasis added). The ALJ stated there was no evidence in the record that would establish the willfulness of the State's violation of section 20.9. Nonetheless, the ALJ held "PERB's remedial authority is not limited to only those situations where prohibited practices have been established, but also extends to 'ordinary' violations." Accordingly, the ALJ ordered the State to disclose the requested information "for the limited purpose of preparing for and litigating these specific grievances." On appeal to the agency, the ALJ's proposed decision was adopted by PERB in spite of its knowledge of the conflicting decision by the arbitrator.

The State sought judicial review in the district court. After analyzing the statutory provisions, the district court held PERB did not have the power to remedy "ordinary," i.e., nonwillful, violations of section

20.10. Therefore, the district court reversed PERB's decision. PERB has appealed.

## II. Scope of Review.

The narrow issue before this court is whether Iowa Code chapter 20 provides for "ordinary" violations of section 20.10, and if so, whether the statute gives PERB authority to remedy such violations.[1] To resolve this issue, we must interpret the statute. Generally, the interpretation of a statute is a matter of law for this court. *See Insituform Techs., Inc. v. Employment Appeal Bd.*, 728 N.W.2d 781, 800 (Iowa 2007). "Nevertheless, we are required to give appropriate deference to the agency's interpretation in certain situations." *Id.* Under the Iowa Administrative Procedure Act, we give deference to an agency's interpretation of a statute if interpretation of the statute "has clearly been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.19(10)(*l*) (providing for reversal under such circumstances only if agency's interpretation was "irrational, illogical, or wholly unjustifiable").

Upon our review of chapter 20, we conclude PERB has not been granted interpretive discretion with respect to that statute. In relevant part, section 20.1 provides:

> The general assembly declares that the purposes of the public employment relations board established by this chapter are to *implement* the provisions of this chapter and *adjudicate* and *conciliate* employment-related cases involving the state of Iowa and other public employers and employee organizations.

---

[1]On judicial review and again on appeal, the State challenges PERB's ruling that the State violated section 20.9. Because we agree with the district court that PERB has no authority to remedy a nonwillful violation of section 20.9, we need not determine whether PERB correctly determined the State violated that provision of the statute.

*Id.* § 20.1 (emphasis added). In addition, this section describes the powers and duties of PERB to include determining appropriate bargaining units, adjudicating prohibited practice complaints, fashioning appropriate remedial relief for violations of chapter 20, acting as arbitrators, providing mediators, collecting and disseminating information, and assisting the attorney general in preparation of legal briefs. *See id.* Section 20.6 provides further detail for the duties and powers of PERB, requiring the board to administer the provisions of chapter 20, collect data, establish minimum qualifications for arbitrators and mediators and their compensation, hold hearings, and adopt rules "to carry out the purposes of this chapter." *See id.* § 20.6.

While it is obvious the legislature has afforded PERB extensive powers to implement and administer the provisions of chapter 20, it is not clear that the legislature intended to delegate interpretive powers to PERB. *See Waterloo Educ. Ass'n v. Iowa Pub. Employment Relations Bd.*, 740 N.W.2d 418, 420 (Iowa 2007) (holding "whether a proposal is a mandatory subject of collective bargaining, as defined by Iowa Code section 20.9, has not been explicitly vested in PERB's discretion"). *Compare Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 509 (Iowa 2003) (holding state agency's general regulatory authority over health care facilities did not qualify as a legislative delegation of discretion to elaborate on the statutory definition of "dependent adult"), *with Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 307 (Iowa 2007) (noting statute provides the director of the department of education with the duty to "[i]nterpret the school laws" and concluding interpretive power had been clearly vested in department). Thus, our review is for correction of errors of law under section 17A.19(10)(*c*). *See Waterloo Educ. Ass'n*, 740 N.W.2d at 419.

### III. Guiding Principles of Statutory Interpretation.

When we interpret a statute, our primary goal is to ascertain the legislature's intent. *State Pub. Defender v. Iowa Dist. Ct.*, 663 N.W.2d 413, 415 (Iowa 2003). To determine the legislature's intent, we first examine the language of the statute. *Id.* "If the statutory language is plain and the meaning clear, we do not search for legislative intent beyond the express terms of the statute." *Horsman v. Wahl*, 551 N.W.2d 619, 620–21 (Iowa 1996). We seek a "reasonable interpretation that will best effect the purpose of the statute and avoid an absurd result." *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). Nonetheless, "[w]e will not interpret a statute so as to render any part of it superfluous." *Am. Legion v. Cedar Rapids Bd. of Review*, 646 N.W.2d 433, 439 (Iowa 2002).

### IV. Discussion.

The union filed the prohibited practice complaints commencing this action pursuant to Iowa Code sections 20.10 and 20.11. Section 20.10 defines a "prohibited practice." Three subsections of section 20.10 set forth conduct that can constitute a prohibited practice. Each subsection requires that the party charged with the prohibited conduct act "willfully."[2] Iowa Code § 20.10(1), (2), (3). Section 20.11 sets forth the procedure that must be followed to charge a party with a "prohibited practice violation."

PERB acknowledges these sections do not encompass nonwillful or ordinary violations. So, to sustain its position that it has the authority to remedy such violations, PERB relies on the general statement of its "powers and duties" set out in section 20.1. That section states PERB

---

[2]For example, subsection 20.10(2) begins with the following language: "It shall be a prohibited practice for a public employer or the employer's designated representative *willfully* to . . . ." (Emphasis added.) Similar language is employed in subsection (1) and subsection (3).

has the power and duty to "[f]ashion[] appropriate remedial relief for violations of this chapter, including but not limited to the reinstatement of employees with or without back pay and benefits." *Id.* § 20.1(3). Because PERB found the State violated section 20.9, it believes it can remedy this violation under the authority of section 20.1(3).

To support this interpretation of section 20.1(3), PERB asserts that, if the legislature had meant to restrict its power to provide remedial relief to prohibited practice violations, it would have referred in section 20.1(3) to "prohibited practices as defined in section 20.10," not "violations of this chapter." In addition, PERB argues that nonwillful violations of chapter 20 are just as likely to undermine the purposes of chapter 20 as willful violations. Consequently, PERB reasons, it makes sense that the legislature would give it the power to remedy nonwillful violations of chapter 20. We are not persuaded by PERB's arguments.

In outlining the procedure for pursuing a prohibited practice complaint, section 20.11 refers to such a practice as a "violation" several times. *Id.* § 20.11 (stating, for example, a complaint must be filed "within ninety days of the alleged violation," "the board may conduct a preliminary investigation of the alleged violation," and the hearing shall be set "in the county where the alleged violation occurred"). Consequently, the legislature's reference in section 20.1(3) to "violations of this chapter" does not necessarily reference anything more than prohibited practice violations.

But regardless of whether the legislature had in mind violations of chapter 20 other than prohibited practice violations when it adopted section 20.1(3), we are convinced it did not have in mind nonwillful violations of section 20.10. To interpret section 20.1(3) as authority for PERB to remedy nonwillful violations otherwise falling within the purview

of section 20.10 would render sections 20.10 and 20.11 largely superfluous. There would be no need for a party to pursue relief under these sections, which require a showing of willfulness, if the same relief could be obtained without such proof. Even if, as asserted by PERB, PERB might choose a different remedy for nonwillful violations than for willful violations, there is nothing in chapter 20 that would restrict the available remedies when a violation is nonwillful. In fact, the remedy granted by PERB in this case—production of the requested documents— is no different than the remedy that would have been available had the union proved willfulness. In short, the union failed to prove a prohibited practice, yet was accorded the remedy it sought. We conclude the practical effect of the interpretation adopted by PERB is to render the requirement of "willfulness" in section 20.10 superfluous. We cannot adopt an interpretation of section 20.1(3) that is inconsistent with the plain language of section 20.10(1).

PERB argues strenuously that its inability to remedy nonwillful violations of section 20.9 would undermine the purpose of chapter 20. Even if there are instances when PERB intervention would further the legislative goals underlying chapter 20, the present circumstances are not one of those instances. Arbitration is valued as an alternative dispute resolution mechanism because it provides a speedy and efficient remedy. *See generally Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.,* 594 N.W.2d 22, 27 (Iowa 1999) (interpreting arbitration statute to promote speed and efficiency of process); *Modern Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.,* 581 N.W.2d 616, 621 (Iowa 1998) (noting purpose of arbitration is "to obtain a speedy, inexpensive and final resolution of disputes"), *overruled on other grounds by Wesley Ret. Servs., Inc.,* 594 N.W.2d at 29. Furthermore, this court has observed

that "[a] refined quality of justice is not the goal in arbitration matters. Indeed such a goal is deliberately sacrificed in favor of a sure and speedy resolution." *LCI, Inc. v. Chipman,* 572 N.W.2d 158, 162 (Iowa 1997). If parties involved in the grievance process could take every dispute to PERB for resolution, the goals of speed and efficiency in the arbitration process would be lost or at least diminished. Here, there is the additional problem of inconsistent decisions. Even if the arbitrator incorrectly decided that the State was not required to produce the requested information, PERB's refined sense of justice must give way to the speedy resolution of the parties' dispute.

In summary, we agree with the State that section 20.10(1) is the enforcement mechanism for a violation of section 20.9. Because section 20.10(1) requires willfulness, PERB has no authority to remedy a nonwillful violation of section 20.9.

### V. Conclusion and Disposition.

Iowa Code section 20.1(3) does not authorize PERB to remedy a violation of chapter 20 that would fall within the definition of "prohibited practice" had the violation been committed willfully. Under PERB's decision, the State's conduct violated section 20.9 and would have constituted a prohibited practice under section 20.10(1) but for the fact the State did not act willfully. Consequently, PERB had no authority to remedy the State's nonwillful violation of section 20.9.

The district court correctly held PERB exceeded its authority when, having ruled the union failed to establish a prohibited practice under section 20.10(1), it nonetheless ordered the State to produce the documents requested by the union. Therefore, we affirm the district court's reversal of PERB's decision.

**AFFIRMED.**