**IN THE SUPREME COURT OF IOWA**

No. 06–1087

Filed June 26, 2009

**TRAVELERS INDEMNITY COMPANY,**

Appellant,

vs.

**COMMISSIONER OF INSURANCE
OF THE STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

A workers' compensation insurer pursues judicial review of a ruling of the commissioner of insurance concluding the insurer charged an excessive premium for workers' compensation coverage under the assigned risk pool. **REVERSED.**

CeCelia Ibson and Laurie J. Wiedenhoff of Smith, Schneider, Stiles & Serangeli, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Jeanie Kunkle Vaudt, Assistant Attorney General, for appellee.

**HECHT**, **Justice**.

In this case, an insurance company challenges an order of the commissioner of insurance finding the company charged an excessive premium to an assigned-risk policyholder. We reverse the commissioner's order as it was based on a finding that is not supported by substantial evidence in the record.

## I. Factual and Procedural Background.

With some exceptions not relevant in this case, Iowa employers are required by law to obtain insurance covering their liability for workers' compensation benefits. *See* Iowa Code § 87.1 (2005). When an employer is "in good faith entitled to" obtain workers' compensation insurance, but is "unable to procure such insurance through ordinary methods" (i.e., the traditional insurance market), such coverage is available through an "assigned risk" market. *Id.* § 515A.15. The "assigned risk" market is a mechanism which allocates among insurers "the underwriting risk for a proportionate share of applicants [who are] unable to obtain coverage in the voluntary market." 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 2:35 (3d ed. 2005).

The Iowa Code authorizes insurers serving the assigned risk market to agree upon an equitable apportionment of the policies among them, and mandates administration of such agreements by a licensed "rating organization." Iowa Code §§ 515A.15, .15B. The National Council on Compensation Insurance (NCCI) is a rating organization operating in Iowa.[1] As the administrator of the assigned risk plan in

---

[1]We have previously described NCCI in a nonassigned risk context as follows:

The National Council on Compensation Insurance (NCCI) collects statistical data on behalf of approximately 200 member and subscriber insurance carriers writing workers' compensation insurance, analyzes that data on a continuing basis, and acts as agent for its members and

Iowa, NCCI adopted rules for the administration, management, and enforcement of the assigned risk plan in Iowa. To determine which insurer will be assigned in a particular case, NCCI employs a formula designed to provide for "the random and equitable distribution of employers . . . to assigned carriers." The annual premium charged by an assigned carrier for the risk is determined by an algorithm which takes into account the increased risk of a particular employer based on the employer's claim history.

Action Moving, Inc. is a small trucking firm headquartered in Sioux City, Iowa. The firm, which also does business through a branch location in Sioux Falls, South Dakota, generates revenue by providing intrastate transportation services under its own name and interstate services as an agent for another trucking company, Atlas Van Lines.

Action Moving made application to NCCI for coverage under the assigned risk plan for the year 2002. The application reported the company's entire payroll and did not claim or disclose other workers' compensation coverage for any portion of the firm's business. NCCI calculated a premium rate that was approved by the commissioner of insurance, and assigned Travelers as the servicing carrier for the policy period that began on January 1, 2002. The policy issued by Travelers to Action Moving made no distinction as to whether a covered injury occurred during intrastate or interstate moves and purported to provide coverage for all claims arising under the workers' compensation law of Iowa or South Dakota.

---

subscribers in presenting requests for premium changes to the proper state regulatory authorities. It carries out these activities in Iowa and thirty-one other states.

*Sheet Metal Contractors of Iowa v. Comm'r of Ins.*, 427 N.W.2d 859, 860 (Iowa 1988).

In March 2003, Action Moving notified Travelers of a dispute as to the amount of premium charged for the 2002 coverage. Action Moving claimed the premium should have been based only on that part of the company's payroll incurred while providing intrastate transportation services in Iowa and South Dakota because its employees were covered by Atlas's workers' compensation insurance when they provided interstate services.[2] Travelers rejected Action Moving's objection, claiming the carrier's exposure extended to all of the insured's employees wherever they were working at the time of injury. Action Moving filed an appeal with NCCI's Workers' Compensation Appeal Board challenging the rate charged by Travelers. *See id.* § 515A.9 (stating every rating organization "shall provide . . . reasonable means whereby any person aggrieved by the application of its rating system may be heard"). NCCI concluded it did not have jurisdiction to rule on the rate dispute.

Action Moving appealed NCCI's decision. *See id.* (authorizing the commissioner of insurance to affirm or reverse decisions of rating organizations). The commissioner of insurance determined NCCI did have jurisdiction of the dispute and remanded the case with instructions for further proceedings. The commissioner's decision noted "[a] rate as applied is not excessive, inadequate or unfairly discriminatory if it is an actuarially sound estimate of the expected value of all future costs associated with an individual risk transfer." The commissioner's decision instructed NCCI to decide on remand the legal question of whether the

---

[2]Atlas deducted from its payments to Action Moving for services rendered the cost of workers' compensation insurance attributable to the interstate services provided by Action Moving's employees. The record does not reveal, however, what insurance company provided such insurance coverage or whether that company was approved by the commissioner as required by Iowa Code section 87.1. Action Moving asserts the insurance carrier assigned by NCCI to provide the coverage for previous policy periods based the premium on only the payroll generated from intrastate services.

rate applied by Travelers to Action Moving's total payroll was commensurate with the cost of the workers' compensation risk undertaken by Travelers as Action Moving's insurer under the assigned-risk plan. In other words, NCCI was directed to address the legal question of whether Travelers had claim exposure for injuries sustained by Action Moving employees when they are hauling for Atlas, notwithstanding any coverage under Atlas's policy. The commissioner's decision further instructed NCCI to "articulate in writing the facts supporting [its] legal conclusion . . . on this issue."

NCCI's remand decision did not expressly address the precise legal question directed to it. After summarizing the evidence presented by Action Moving and Travelers, the decision summarily stated:

> In executive session, the Board members discussed the testimony presented and discussed the fact that [Action Moving] was paying more for workers' compensation insurance than similar risks. The Board also discussed that there is an issue in determining where liability exists if the injury occurs after the fact, and not while actually driving for [Action Moving] or Atlas Van Lines. There being no further discussion, a motion was made, properly seconded, and passed by majority vote, and it was RESOLVED, that the payroll for [Action Moving] be split according to interstate and intrastate exposure. Travelers Insurance Company will calculate premium . . . based on the intrastate exposure of [Action Moving].

Although the NCCI decision did summarize the evidence presented by Action Moving and Travelers, it did not articulate findings of fact or conclusions of law as directed by the commissioner. Travelers again appealed NCCI's decision to the commissioner of insurance.

When the commissioner considered this matter for the second time, the only question before the agency was whether NCCI "correctly determined that [Action Moving's] payroll should be allocated between employers in applying the relevant rate." After a noncontested case

hearing, the commissioner affirmed NCCI's determination that the rate as applied by Travelers was excessive because it required Action Moving to pay twice for workers' compensation coverage for employees performing work under the agency agreement with Atlas.[3]

Travelers sought judicial review of the commissioner's order. The district court affirmed the commissioner's order, concluding substantial evidence supported the commissioner's finding that Travelers had charged Action Moving an excessive premium for workers' compensation insurance. Travelers appeals, contending the commissioner erred in its interpretation of the applicable law, in its application of the applicable law to the facts, and in making fact findings that are not supported by substantial evidence in the record.[4]

## II. Scope of Review.

There is some confusion as to the appropriate standard of review for the commissioner's factual findings in this case. The parties agree this case involves "other agency action" and is not a "contested case" under Iowa Code chapter 17A. *Compare* Iowa Code § 17A.2(2) (defining agency action as including "the whole or a part of an agency rule or other statement of law or policy, order, decision, license, proceeding, investigation, sanction, relief, or the equivalent or a denial thereof, or a failure to act, or any other exercise of agency discretion or failure to do so, or the performance of any agency duty or the failure to do so"), *with id.* § 17A.2(5) (defining contested case as "a proceeding . . . in which the

---

[3]Appeals of the manner in which a rating system has been applied are not contested cases. *See* Iowa Code § 515A.9.

[4]Because we find a finding of fact upon which the commissioner's legal conclusions are based is not supported by substantial evidence, we do not address Travelers' challenges to the commissioner's interpretation and application of the law.

legal rights, duties or privileges of a party are required by the Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing"). The enabling act for the Insurance Division does not provide for contested case hearings in actions under chapter 515A. *See id.* § 505.23. As "other agency action," the commissioner's decision in this case was not bound by the procedural rules applicable to a "contested case." *See id.* § 17A.12.

The district court found the substantial evidence standard of section 17A.19(10) does not apply because this matter involves "other agency action" and not a "contested case." Citing our opinion in *Greenwood Manor v. Department of Public Health*, 641 N.W.2d 823 (Iowa 2002), the district court noted a reviewing court only examines "whether the agency committed an error of law or acted unreasonably, capriciously, or arbitrarily." 641 N.W.2d at 831. On appeal, both parties assert our standard of review requires us to determine whether the agency's action is unreasonable, capricious, or arbitrary.

The cases relied on by the district court in finding the substantial evidence standard only applies to judicial review of contested cases were based on a pre-1998 version of section 17A.19. *See* Iowa Code § 17A.19(8)(*f*) (1997) (stating the court may grant relief when agency action is "[i]n a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole"). In 1998, the General Assembly substantially revised section 17A.19, including the standards of judicial review previously listed in section 17A.19(8). *See* 1998 Iowa Acts ch. 1202, § 24. The amendment affecting the "substantial evidence" standard removed the reference to contested case hearings, thereby expanding substantial evidence review to all factual findings by an agency. Iowa Code § 17A.19(10)(*f*) (2001)

(permitting the court to grant relief from prejudicial agency action "[b]ased upon a determination of fact clearly vested by a provision of law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole"). As explained by the reporter-draftsman of the 1998 revisions,

> [p]aragraph (*f*) now also applies the substantial evidence test to all ultimate facts found by an agency, as well as to all basic facts underlying those ultimate facts, pursuant to a clear delegation of authority to the agency to do so, whether those facts are found in formal adjudication and, therefore, were subject to the "substantial evidence" test under the original IAPA, or in informal adjudication or rulemaking which were subject to the "unreasonable, arbitrary, capricious, or abuse of discretion" test under the original IAPA. The change was made to a single standard for the judicial review of all facts found by an agency pursuant to a delegation of authority to do so because the "substantial evidence" and "unreasonable, arbitrary, or capricious" tests are functionally similar. Both required only deferential review rather than rightness or substitution of judgment review, and both substantively embody the exact same reasonable person standard of review.

Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 68 (1998). The district court thus erred in relying on the former version of section 17A.19 and cases decided under that statute in stating the scope of review.

The legislature has delegated to the commissioner of insurance authority to determine whether rates charged by companies providing workers' compensation insurance are excessive. *See* Iowa Code §§ 515A.1 (2005) (the purpose of chapter 515A is to "promote the public welfare by regulating insurance rates to the end that they shall not be excessive"); 515A.3(1)(*a*) ("[r]ates shall not be excessive"); 515A.4(3) (commissioner authorized to review rate filings to determine whether they meet the requirements of chapter 515A); 515A.5 (commissioner

authorized to disapprove workers' compensation insurance rate filings which fail to meet the requirements of chapter 515A). We therefore review the commissioner's factual findings for substantial evidence based on the record viewed as a whole. *Id.* § 17A.19(10)(*f*). Substantial evidence is

> the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

*Id.* § 17A.19(10)(*f*)(1).

### III. Discussion.

Travelers challenges the commissioner's determination that the premium charged to Action Moving was excessive. The commissioner's determination that the premium charged by Travelers was excessive is based on the crucial finding that Action Moving's liability for workers' compensation benefits owed to its employees injured while providing interstate services under the agency agreement with Atlas was insured by another approved carrier. Travelers contends this finding is not supported by substantial evidence.

Action Moving, like most employers, is statutorily required to obtain workers' compensation insurance from "some corporation, association, or organization approved by the commissioner of insurance." *Id.* § 87.1. In the proceedings before NCCI and the commissioner, Action Moving asserted Travelers' premium was excessive because Action Moving had already secured adequate coverage for its interstate transportation services from Atlas's insurance carrier. *See id.* § 515A.1 (stating the purpose of the workers' compensation liability insurance chapter of the Iowa Code is "to promote the public welfare by regulating

insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory"). The commissioner found Action Moving had obtained such coverage through Atlas's master workers' compensation plan, and consequently the premium charged by Travelers based on Action Moving's entire payroll was excessive.

The commissioner relies on four items of evidence to support her finding Action Moving procured coverage through Atlas workers' compensation insurance for its employees engaged in interstate transportation services. First, the commissioner notes the agency agreement between Atlas and Action Moving expressly required Action Moving to either provide its own workers' compensation insurance coverage, with an "all-states" endorsement, or to accept coverage under Atlas's plan.[5] Second, the commissioner cites two letters in the record, one from Grandy Pratt Company (Action Moving's insurance agent) to Travelers and another from Atlas to Travelers, indicating Action Moving's employees were covered by Atlas's workers' compensation insurance when they performed work for Atlas. Finally, the commissioner points out it is undisputed Atlas's (unidentified) workers' compensation insurer paid previous workers' compensation claims of Action Moving employees at some unspecified time.

We conclude the record is inadequate to support the agency's finding of fact that Action Moving was insured for workers' compensation claims arising from interstate transportation services by an approved insurer other than Travelers during the policy period which is the subject

---

[5]We note the agency agreement actually entered into the record before the commissioner was a blank copy of Atlas's standard agency agreement and was not the actual agency agreement formed by Action Moving and Atlas. Travelers disputes neither the existence of the agency agreement between Atlas and Action Moving nor the terms of that agreement pertaining to workers' compensation insurance coverage.

of this case. Although the agency agreement between Atlas and Action Moving and the letters cited by the commissioner tend to prove Atlas granted Action Moving two alternatives for securing workers' compensation insurance and that Action Moving chose to be covered under Atlas's master workers' compensation plan, the record does not identify a carrier who allegedly provided such coverage during the relevant time period. The record is also devoid of evidence tending to establish that Atlas's unidentified carrier was a company "approved by the commissioner of insurance" to insure workers' compensation risks in Iowa. *See id.* § 87.1. The fact that Atlas's unidentified workers' compensation insurer paid the workers' compensation claims of some Action Moving employees at an unspecified time in the past does not constitute substantial evidence that Action Moving had coverage for such claims during the policy period in question.

As the commissioner's conclusion that Travelers charged Action Moving an excessive premium was based on her unsupported finding that Action Moving had obtained adequate workers' compensation coverage for claims arising in the course of interstate transportation services from another approved insurer for the same policy period, Travelers has demonstrated its substantial rights were prejudiced by that factual finding. *Id.* § 17A.19(10).

**IV. Conclusion.**

The commissioner's finding that Action Moving obtained alternative workers' compensation insurance coverage for its interstate transportation services from an insurer other than Travelers is not supported by substantial evidence in the record. We therefore reverse the commissioner's order.

**REVERSED.**

All justices concur except Baker, J., who takes no part.