# IN THE SUPREME COURT OF IOWA

No. 12–0383

Filed May 17, 2013

**CHARTIS INSURANCE** f/k/a AMERICAN
INTERNATIONAL GROUP, INC.,

      Appellant,

vs.

**IOWA INSURANCE COMMISSIONER,**

      Appellee,

**ACTION WAREHOUSE CO., LTD.,**

      Intervenor–Appellee.

---

Appeal from the Iowa District Court for Polk County, Artis I. Reis, Judge.

An insurance company appeals from a decision of the district court affirming the decision of the Iowa Insurance Commissioner. **REVERSED AND REMANDED.**

Scott A. Sundstrom and Ryan G. Koopmans of Nyemaster Goode, P.C., Des Moines, and Constantine L. Trela, Jr., Susan A. Stone, and Bruce Braverman of Sidley Austin LLP, Chicago, Illinois, for appellant.

Thomas J. Miller, Attorney General, and Jeanie Kunkle Vaudt, Assistant Attorney General, for appellee.

Joseph G. Gamble and Bradley C. Obermeier of Duncan, Green, Brown & Langeness, Des Moines, for intervenor–appellee.

**ZAGER, Justice**.

In this case, Chartis Insurance (Chartis), formerly known as American International Group, Inc., urges us to consider whether the Iowa Insurance Commissioner (Commissioner) has the authority under Iowa Code section 515A.1 to consider an as-applied challenge to a workers' compensation liability insurance rating schedule approved for use in accordance with Iowa law. We conclude the Commissioner does not have the authority under Iowa Code section 515A.1 to reject a faithful application of a plan previously approved under Iowa Code section 515A.4, despite the perceived unfairness of that application. We conclude this to be true even if, in the Commissioner's judgment, this individual application results in a premium that is excessive or unfairly discriminatory under Iowa Code section 515A.1. Further, the legislature intended a section 515A.9 hearing to be limited to a review of the manner in which an approved rating system has been applied to an insured. Therefore, for the reasons set forth below, we reverse.

## I. Factual Background and Procedural History.

The facts of this case are not disputed. Chartis issued two workers' compensation insurance policies to Action Warehouse Company, Ltd. (Action), one that had a term of December 31, 2006, through December 31, 2007, and one that had a term of December 31, 2007, through December 31, 2008.

During the terms of these policies, Action contracted with both Firestone North American Tire, LLC (Firestone) and Titan Tire Distribution (Titan) to provide employees to operate tire warehouses owned respectively by Firestone and Titan and used exclusively to store the goods manufactured by the respective owners. Action acknowledges that both Firestone and Titan contracted with Action because the tire

manufacturers wanted to avoid dealing with labor unions in the operation of their warehouses.

These Action employees were permanent employees who worked exclusively in warehouses owned by the tire manufacturers. Both Chartis and Action agree that these employees did not work directly in the tire manufacturing process. In fact, Firestone's warehouse is located eight miles away from the factory where the actual tire manufacturing process occurs, and Titan's warehouse is located a quarter of a mile away. Employees of the warehouses were not even allowed to enter the factories where tire manufacturing actually occurred, as collective bargaining restrictions prohibited their presence on the factory floor.

Insurers offering workers' compensation liability insurance in Iowa are required to comply with Iowa Code chapter 515A. The National Council on Compensation Insurance (NCCI) has created a rating and classification system for determining the premium rates insurers charge for workers' compensation coverage.[1] NCCI filed its rating and classification system for approval in accordance with Iowa Code chapter 515A.4, and the Iowa Insurance Division, headed by the Commissioner, approved NCCI's system. That rating and classification system is set forth in the *Basic Manual for Workers Compensation and Employers Liability Insurance* (*Basic Manual*). In accordance with Iowa statute,

---

[1]We have previously described the function of NCCI as follows:

> "The National Council on Compensation Insurance (NCCI) collects statistical data on behalf of approximately 200 member and subscriber insurance carriers writing workers' compensation insurance, analyzes that data on a continuing basis, and acts as agent for its members and subscribers in presenting requests for premium changes to the proper state regulatory authorities. It carries out these activities in Iowa and thirty-one other states."

*Travelers Indem. Co. v. Comm'r of Ins.*, 767 N.W.2d 646, 648 n.1 (Iowa 2009) (quoting *Sheet Metal Contractors of Iowa v. Comm'r of Ins.*, 427 N.W.2d 859, 860 (Iowa 1988)).

Chartis exercised its option to adopt the NCCI system for determining the premium rates it charges for workers' compensation. *See* Iowa Code § 515A.4(2) (2009). Thus, the coverage Chartis provided to Action was governed under the terms of the *Basic Manual.*

Originally, Chartis classified the Action employees who staffed the Firestone and Titan warehouses under the NCCI classification code applicable to general warehouse employees (8292). However, pursuant to the terms of its workers' compensation insurance policies, Chartis performed an audit of Action's operations after the conclusion of the first year of coverage, but during the second year of coverage. Action does not dispute that Chartis had the right to do so under the terms of its agreement with Action. After conducting this audit, Chartis both retroactively and prospectively changed the employees' classification code to the code applicable to rubber tire manufacturing (4420). This change resulted in a significantly higher premium. Another Chartis auditor reconsidered and confirmed the findings of the initial audit. Action argues the effect of this retroactive change in the classification code was unfair.

In response, following the procedures set forth in the *Basic Manual,* Action then ordered an inspection through NCCI to determine the appropriate classification code for Action employees working in the Firestone and Titan warehouses. The initial NCCI inspector agreed with Action and concluded that the insurance premium should be changed back to the rate applicable to warehouse workers. However, a subsequent NCCI inspector agreed with Chartis's assessment, and the classification code remained as that applicable to rubber tire manufacturing.

Action then appealed the change in classification code to the NCCI Iowa workers' compensation appeals board (appeals board), as required by the dispute resolution provisions of the *Basic Manual*. The appeals board ruled in favor of Chartis, holding that Chartis correctly applied the relevant *Basic Manual* rules and accurately reclassified the Action workers. In accordance with the provisions of Iowa Code section 515A.9, Action appealed the decision of the appeals board to the Commissioner. Chartis does not dispute the Commissioner's authority to make a determination about whether it complied with the filed rate schedule, as defined by the *Basic Manual*. The Commissioner reversed the ruling of the appeals board, finding that the original audit was improper and requiring Chartis to classify the employees as warehouse employees. This original decision of the Commissioner found Chartis had not complied with the requirements of the *Basic Manual*.

Chartis then filed a petition for judicial review requesting the district court reverse the decision issued by the Commissioner and requesting that the district court uphold the decision of the appeals board. Prior to a ruling by the district court, and upon motion by the Commissioner, the district court remanded the case back to the Commissioner for further proceedings. Rather than relying on or expanding the original decision, the Commissioner ordered the parties to submit postremand briefs. The Commissioner directed the parties to address the issue of whether charging Action the premium rate for workers' compensation coverage under the rubber tire manufacturing classification violated Iowa Code chapter 515A's prohibition on rates that are "excessive, inadequate, or unfairly discriminatory." *See* Iowa Code § 515A.1. After reviewing the briefs, the Commissioner found, "NCCI employee classification rules approved by the agency for use by workers'

compensation carriers in calculating premium rates cannot override the broad review authority the legislature granted the Commissioner under chapter 515A to review these rates as applied." The Commissioner further found that the rate charged by Chartis as a result of its classifying Action workers as rubber tire manufacturing employees "is excessive because the actual risk of harm to the affected workers is not commensurate with the premium [Chartis] assessed Action Warehouse for the coverage in question."

Thus, after remand to the Commissioner, the Commissioner reversed the ruling of the appeals board on entirely different grounds than in her original decision, though she ruled in favor of Action both times. Though the original decision specifically found that "the original audit was improper in considering these employees to be classified as Code 4420" based on its analysis of the rules in the *Basic Manual*, the decision following remand never reached that issue. The Commissioner relied on her general authority as provided in Iowa Code section 515A.1.

Pursuant to the NCCI filed rules, businesses are generally assigned one classification, and "each classification includes all the various types of labor found in a business."[2] Further, employees provided by a labor contractor such as Action and "assigned to clients must be classified the same as direct employees of the client performing the same or similar duties."[3] Thus, Chartis has always contended that under the NCCI

---

[2]*Basic Manual* Rule 1-A provides:

The purpose of the classification procedure is to assign the one basic classification that best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business.

It is the business that is classified, not the individual employments, occupations or operations within the business.

[3]*Basic Manual* Rule 1-D-3-f provides:

rules, Firestone and Titan are rubber tire manufacturers for all of its Iowa employees. Moreover, any employees provided by a labor contractor such as Action are required to have the same 4420 classification. In her final ruling, the Commissioner did not address whether Chartis had correctly followed the NCCI rates. Rather, she simply acknowledged, "Chartis calculated the premium rate it charged Action Warehouse for this coverage by classifying these employees under NCCI's worker classification rules."

The district court affirmed the final agency order of the Commissioner, choosing to "defer to the agency's expertise and discretion to interpret and apply its own statute." The district court agreed with the Commissioner's conclusion that the premium rate Chartis applied to Action workers after the reclassification to the rubber tire manufacturer rate was "excessive and therefore prohibited by Iowa Code section 515A.1."

Chartis appeals the ruling of the district court. We retained the appeal.

For the reasons which will be explained later in this opinion, we assume for purposes of this appeal that the rates charged by Chartis following its audit complied with the NCCI rates filed with and approved by the Insurance Commissioner. The sole issue on appeal, then, is whether the Commissioner has the authority to determine that a specific application of a plan approved under Iowa Code section 515A.4 violates

---

f. **Employee Leasing, Labor Contractors and Temporary Labor Services**

(1) Workers assigned to clients must be classified the same as direct employees of the client performing the same or similar duties.

(2) If the client has no direct employees performing the same or similar duties, leased employees are classified as if they were direct employees of the client entity.

the statute's general purpose as outlined in Iowa Code section 515A.1 by being "excessive, inadequate, or unfairly discriminatory."

## II. Standard of Review.

Our task in reviewing a "district court decision reviewing agency action is to decide whether the district court correctly applied the law." *Buckley v. Iowa Dep't of Human Servs.*, 638 N.W.2d 675, 676 (Iowa 2001) (per curiam). Iowa Code section 17A.19(8) provides that "in suits for judicial review of agency action . . . [t]he validity of agency action must be determined in accordance with the standards of review provided in this section, as applied to the agency action at the time that action was taken." Iowa Code § 17A.19(8).

We have recently articulated our standard of review in evaluating judicial review of agency action.

> Iowa Code section 17A.19(10) governs judicial review of agency decision making. We will apply the standards of section 17A.19(10) to determine whether we reach the same results as the district court. The district court may grant relief if the agency action has prejudiced the substantial rights of the petitioner, and the agency action meets one of the enumerated criteria contained in section 17A.19(10)(*a*) through (*n*).
>
> Under Iowa Code section 17.19(10) (2007), our standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review."

*Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255–56 (Iowa 2012) (citation and internal quotation marks omitted).

> If an agency has been clearly vested with the authority to make factual findings on a particular issue, then a reviewing court can only disturb those factual findings if they are "not supported by substantial evidence in the record before the court when that record is reviewed as a whole."

*Id.* at 256 (quoting Iowa Code § 17A.19(10)(*f*)). Additionally, "[w]hen an agency has been clearly vested with the authority to make factual determinations, it follows that application of the law to those facts is likewise vested by a provision of law in the discretion of the agency." *Id.* (citations and internal quotation marks omitted). Further,

> [w]hen the application of law to fact has been clearly vested in the discretion of an agency, a reviewing court may only disturb the agency's application of the law to the facts of the particular case if that application is "irrational, illogical, or wholly unjustifiable."

*Id.* (quoting Iowa Code § 17A.19(10)(*m*)).

We must first determine, then, if the Commissioner was vested with the authority to make factual findings on a particular issue. Iowa Code section 515A.5 gives the Commissioner the authority to make factual findings in relation to whether "a filing does not meet the requirements of this chapter." Iowa Code § 515A.5(1). Similarly, Iowa Code section 515A.9 allows the Commissioner "to review the manner in which such rating system has been applied in connection with the insurance afforded the person." Iowa Code § 515A.9. However, the Commissioner seeks her authority in this case under Iowa Code section 515A.1. This section, entitled "purpose of chapter," provides no authority for the Commissioner to make factual findings as to whether an insurance company meets the general purpose of the chapter. *See* Iowa Code § 515A.1.

We have said, "Normally, the interpretation of a statute is a pure question of law over which agencies are not delegated any special powers by the General Assembly so[] a court is free to . . . substitute its judgment *de novo* for that of the agency and determine if the agency interpretation of the statute is correct." *Renda v. Iowa Civil Rights*

*Comm'n*, 784 N.W.2d 8, 11 (Iowa 2010) (quoting Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 62 (1998) [hereinafter Bonfield]).  We further stated,

> Notably, section 17A.10(*c*) does not require that the discretion be "expressly" vested in the agency, but instead uses the less restrictive term "clearly."
>
> "This means that the reviewing court, using its own independent judgment and without any required deference to the agency's view, must have a firm conviction from reviewing the precise language of the statute, its context, the purpose of the statute, and the practical considerations involved, that the legislature actually intended . . . to delegate to the agency interpretive power with the binding force of law over the elaboration of the provision in question."

*Id.* (quoting Bonfield at 63).  We cannot conclude that the language of Iowa Code section 515A.1 clearly vested in the Commissioner this authority.  Thus, we conclude that our review of the application of Iowa Code section 515A.1 is de novo.

### III.  Statutory Framework.

The Iowa Insurance Commissioner acts under the statutory authority of Iowa Chapter 515A.  The legislature articulated the purpose of this chapter as follows:

> The purpose of this chapter is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory, and to authorize and regulate co-operative action among insurers in rate making and in other matters within the scope of this chapter. . . .  This chapter shall be liberally interpreted to carry into effect the provisions of this section.

Iowa Code § 515A.1.

Iowa has created a statutory structure to protect those purchasing workers' compensation insurance from having to pay rates that are "excessive, inadequate or unfairly discriminatory."  *Id.*  To achieve this

statutory purpose, Iowa Code section 515A.3 explicitly requires that when rates are made, they "shall not be excessive, inadequate, or unfairly discriminatory." *Id.* § 515A.3(1)(*a*). In order to assure compliance with this directive, it has granted the Commissioner broad authority to approve rate plans under a "rate filing" statutory scheme.

As a rate-filing state, Iowa requires that "[e]very insurer shall file with the commissioner every manual, minimum, class rate, rating schedule or rating plan and every other rating rule, and every modification of any of the foregoing which it proposes to use." *Id.* § 515A.4(1)(*a*). Further, after these filings occur, there is a mandatory waiting period before it becomes effective. *Id.* § 515A.4(4). "A filing shall be deemed to meet the requirements of this chapter unless disapproved by the commissioner before the expiration of the waiting period . . . ." *Id.* "An insurer may satisfy its obligation to make such filings by becoming a member of, or a subscriber to, a licensed rating organization which makes such filings, and by authorizing the commissioner to accept such filings on its behalf . . . ." *Id.* § 515A.4(2). "No insurer shall make or issue a contract or policy except in accordance with the filings which are in effect for the insurer as provided in this chapter . . . ." *Id.* § 515A.4(7).

**IV. Discussion and Analysis.**

**A. The Commissioner's Authority to Review the Application of Approved Rates to Clients.** We must first evaluate whether the Commissioner has the authority to make a determination as to whether the rate Chartis applied to Action was consistent with the requirements of the statute. The Commissioner urges us to find she has the authority to evaluate this as-applied challenge, based on the statutory guidance found under Iowa Code section 515A.1.

Chartis, however, argues the Commissioner exceeds her statutory authority by using this section to conclude that Chartis's rates, as applied to this specific customer, are excessive. Chartis argues that the legislature provided two specific avenues by which the Commissioner could adjudicate challenges to the rates a workers' compensation insurance provider proposes to charge or has charged its customer: Iowa Code section 515A.5 and section 515A.9.

Both the Commissioner and the district court explicitly stated they were ruling on the rates "as applied." They argue that the Commissioner has broad authority under Iowa Code section 515A.1 to regulate insurers to comply with the general purpose of the chapter, even if the method by which they choose to do it is not specifically included in the statutory language. In the ruling issued after remand from the district court, the Commissioner concluded,

> NCCI employee classification rules approved by the agency for use by workers' compensation carriers in calculating premium rates cannot override the broad review authority the legislature granted the Commissioner under chapter 515A to review these rates as applied. Section 515A.1 requires that rates as applied cannot be "excessive, inadequate, or unfairly discriminatory." The rate at issue as applied under the record presented is excessive because the actual risk of harm to the affected workers is not commensurate with the premium Chartis assessed Action Warehouse for the coverage in question.

The district court validated this broad interpretation of the statute to grant the Commissioner this authority when it stated:

> Chartis argues that because the premium rates NCCI filed with the agency on behalf of Chartis have been approved by the agency, Chartis is merely doing what it is legally entitled to do. Chartis's argument equates agency approval of a premium rate filing with agency approval of the effect of that rate as applied in a specific circumstance—even if the application results in a rate that is excessive and therefore prohibited by section 515A.1. This argument is unpersuasive.

The district court additionally concluded that Chartis would receive a "premium windfall" if the approved rate was applied to Action's workers, as Action's workers "are physically separated from the tire manufacturing process." The district court found that this violated the prohibition on excessive rates found in Iowa Code section 515A.1.

**B. The Legislature Provided Specific Statutory Avenues to Challenge Workers' Compensation Insurance Rates in Iowa.** The legislature has given the Commissioner statutory authority to hear two types of challenges to workers' compensation insurance rates that have been filed and approved in accordance with Iowa Code section 515A.4.

1. *Iowa Code section 515A.5(2) provides an avenue for the Commissioner to determine approved rates do not fulfill statutory requirements.* Iowa Code section 515A.5(2) provides, in part:

> At any time subsequent to the applicable review period provided for in subsection 1, the commissioner may hold a hearing to determine whether a filing meets the requirements of this chapter. The commissioner shall provide notice of a hearing not less than ten days prior to the hearing to every insurer and rating organization which made the filing, specifying the matters to be considered at the hearing. If the commissioner finds that a filing does not meet the requirements of this chapter, the commissioner shall issue an order specifying in what respects the commissioner finds that the filing fails to meet the requirements of this chapter, and stating when, within a reasonable period thereafter, the filing shall be deemed no longer effective.

Iowa Code § 515A.5(2). We have previously described 515A.5 as authorization for the commissioner "to disapprove workers' compensation insurance rate filings which fail to meet the requirements of chapter 515A." *Travelers Indem. Co. v. Comm'r of Ins.*, 767 N.W.2d 646, 651 (Iowa 2009). The only option available to the Commissioner under 515A.5(3), then, would be to provide public notice and hold a

hearing as described in the statute to determine whether a filing meets the requirements of the chapter.[4]

Chartis used NCCI's *Basic Manual* to determine the rate it would charge Action for the employees at the Firestone and Titan warehouses. Neither Action nor the Commissioner dispute that NCCI adhered to Iowa's statutory requirements for rate filing, nor does either dispute that Chartis adhered to these requirements when it adopted NCCI's rating system for use in Iowa. NCCI filed its *Basic Manual* per the requirements of Iowa Code section 515A.4, and Chartis exercised its right to satisfy the requirements of section 515A.4 by adopting the *Basic Manual* in assigning its insurance rates. A challenge under section 515A.5(3) was not made, nor was one decided by the Commissioner or the district court.

2. *Iowa Code section 515A.9 provides an avenue for the Commissioner to determine if approved rates have been appropriately applied.* Iowa Code section 515A.9 provides, in part:

> Every rating organization and every insurer which makes its own rates shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by the person's authorized representative, on the person's written request to review the manner in which such rating system has been applied in connection with the insurance afforded the person. . . . Any party affected by the action of such rating organization or such insurer on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after a hearing held upon not less than ten days' written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action.

Iowa Code § 515A.9.

---

[4]We note also that the authority granted the Commissioner under Iowa Code section 515A.5(3) is prospective only, so the Commissioner would not have the authority to retroactively change the rates Chartis charged Action. *See* Iowa Code § 515A.5(2).

We have previously noted that Iowa Code section 515A.9 "authorizes dispute resolution procedures not only for both rates and rating systems but also for those 'aggrieved by the application of its rating system.'" *Travelers Indem. Co. v. D.J. Franzen, Inc.*, 792 N.W.2d 242, 247 (Iowa 2010) (quoting Iowa Code § 515A.9). "Since premiums are derived from rates and ratings plans, entities paying premiums 'are aggrieved by the application' of the rating system. Therefore, section 515A.9 provides a procedure for premium disputes." *Id.* It is thus undisputed that the Commissioner has the authority to determine if the application of a statutorily-approved ratings plan complies with the terms of that plan under Iowa Code section 515A.9. Chartis has never disputed that the Commissioner had the authority to determine whether Chartis had complied with the *Basic Manual*.

However, subsequent to the remand, the Commissioner did not consider the issue Iowa Code section 515A.9 gives her the authority to review—"the manner in which [the approved] rating system has been applied in connection with the insurance afforded the person." *See* Iowa Code § 515A.9. Rather, the Commissioner attempted to expand her powers under this section 515A.9 hearing, based on her broad interpretation of Iowa Code section 515A.1. The language of the statute is unambiguous. *See In re Det. of Johnson*, 805 N.W.2d 750, 753 (Iowa 2011) ("We do not search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear." (citation and internal quotation marks omitted)). The Commissioner's authority is limited to the "manner in which [an approved] rating system has been applied." *See* Iowa Code § 515A.9. In other words, it is limited to the question of whether Chartis applied the proper employee classification required by the filed and approved rating rules. The statute does not

contemplate a situation like the one presented here, where an insurance company follows the statutory procedure outlined under section 515A.4 to get a rating system approved, then faithfully applies that rating system, only to have the Commissioner decide that the approved rating (premium) is "excessive" as applied to one specific situation. Iowa Code section 515A.9 does not provide the proper procedure for challenging the validity of the rating rule itself or the corresponding premium. The Iowa legislature enacted a separate procedure for challenging rate filings. *See* Iowa Code § 515A.5(3). The plain language of section 515A.5(3) confirms that the legislature intended this code section to be the only procedural avenue available to challenge a rate filing. Additionally, the statute provides that any change in the rate filing is only prospective in nature. Iowa Code § 515A.5(2) ("If the commissioner finds that a filing does not meet the requirements of this chapter, the commissioner shall issue an order specifying in what respects the commissioner finds that the filing fails to meet the requirements of this chapter, and stating when, within a reasonable period thereafter, the filing shall be deemed no longer effective."). Therefore, nothing in the statute contemplates a retroactive application of an adjusted rate. Otherwise, the Commissioner would be cloaked with virtually unlimited discretion over rates, subverting the intent of the ratings system codified in chapter 515A. We conclude that the legislature intended for a section 515A.9 hearing to be limited to a review of the manner in which an approved rating system has been applied to an insured.

After the remand, every document filed—the decision of the Commissioner, the decision of the district court, and the briefs submitted on appeal—centered on the issue the Commissioner identified in her postremand brief order—whether the Commissioner had the authority to

consider an as-applied challenge in the event an insurer properly applies a rate schedule approved under section 515A.4. Action, in its role as intervenor, elected to adopt the Commissioner's brief on appeal, and specifically agreed to be bound by it. Action and the Commissioner do not ask us to decide whether the rates charged by Chartis comply with the *Basic Manual.* Thus, for purposes of section 515A.9, there is not a viable dispute over "the manner in which such rating system has been applied." *See* Iowa Code § 515A.9.

3. *The Commissioner does not have unlimited authority to fulfill the general purpose of the statute in the absence of a statutorily-prescribed avenue to do so.* We have previously considered the question of whether a statutory provision providing general guidance on the interpretation of a statute gives the agency specific authority to resolve a dispute. In *State v. Public Employment Relations Board,* we considered the question of whether the legislature had granted the Public Employment Relations Board (PERB) the authority to remedy nonwillful violations of Iowa Code chapter 20. 744 N.W.2d 357, 358 (Iowa 2008). We noted that Iowa Code "section 20.10 set forth conduct that can constitute a prohibited practice." *Id.* at 361. PERB acknowledged that it did not have enumerated authority to charge a party with nonwillful violations. *Id.* Thus, PERB attempted to "rel[y] on the general statement of its 'powers and duties' . . . [that] states PERB has the power and duty to '[f]ashion[] appropriate remedial relief for violations of this chapter.'" *Id.* (quoting Iowa Code § 20.1). We noted the legislature had provided specific ways in which a party could seek relief, and that those sections "require[d] a showing of willfulness." *Id.* at 361–62. We concluded that because "the State did not act willfully[,] . . . PERB had no authority to remedy the State's nonwillful violation." *Id.* at 362.

Similarly, we conclude that the general purpose provision of Chapter 515A does not provide independent authority for the agency to do anything it might deem necessary to fulfill the purpose of the statute, particularly when the legislature has provided very specific avenues for the Commissioner to review how the statute is being applied. As a result, based on our de novo review, we find the Commissioner did not have general authority under 515A.1 to decide an as-applied challenge in the manner she attempted to do so here.

**V. Disposition.**

For the reasons stated above, we reverse the findings of the district court and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**