Donald E. WEATHERWAX II, Individually and as Administrator of the Estate of Sara S. Weatherwax, and Donald E. Weatherwax III, By Donald E. Weatherwax II, His Father and Next Friend, Appellants,

v.

Whealan KOONTZ, Appellee,

and

Steven H. Griffith, Defendant.

No. 94–708.

Supreme Court of Iowa.

March 20, 1996.

Tom Riley and Charles C. Brown, Jr., of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Lawrence E. Blades and Charles Blades of Blades, Carmichael, Rosser & Benz, Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

■ We continue to face complaints that a jury verdict does not correctly reflect the agreement of the jury, or is erroneous for some other reason. In sorting through these complaints, the threshold question is whether the inquiry is appropriate. At one extreme, matters within the jurors' reasoning process are said to inhere in the verdict and are obviously inappropriate for examination. At the other extreme, questions concerning outside influences improperly introduced into jury deliberations can be shown in an attempt to impeach the verdict because they are thought to poison the process. In closer cases, such as the present one, the line between the two types of inquiries is less easily discerned.

This medical malpractice case was submitted to the jury under the Comparative Fault Act. Iowa Code ch. 668 (1993). Under this statutory scheme the jury is to determine the various degrees of fault among the parties and to assess the amount of total resulting damages. On the basis of these findings, the judge is thereafter to compute any liability of the parties under the principles of comparative fault. By means vigorously challenged on appeal, the plaintiffs sought to show that, after assessing damages, the jury itself made the comparative-fault computation and erroneously entered the adjusted amount of its verdict rather than their agreed total assessment. Thus, it is claimed, the comparative-fault computation later entered by the trial court was for a fraction of the correct amount. Plaintiffs sought a reformation of the verdict or, alternatively, a new trial. The trial court considered the plaintiffs' proffered evidence, but nevertheless rejected the post-trial motion. We find no reason to interfere and thus affirm. So doing, we vacate a court of appeals decision that would have directed a new trial.

Plaintiffs Donald Weatherwax, II and Donald Weatherwax, III sued Steven Griffith and Whealan Koontz, both medical doctors, for the wrongful death of Sara Weatherwax al-

leging lost chance of survival as a result of a misdiagnosis. The Weatherwaxes settled with Griffith, and their claim against Koontz proceeded to trial. After weighing all of the evidence presented, the jury returned a verdict finding Koontz ten percent at fault. In response to the interrogatory asking "[t]he present value of the opportunity to receive early treatment and the chance of realizing any resulting gain in life expectancy and physical or mental comfort," the jury indicated $96,134. The trial judge accepted the verdict and discharged the jury late on a Friday afternoon.

Acting ex parte over the weekend, without knowledge of the court or opposing counsel, plaintiffs' counsel questioned the discharged and dispersed jurors about the verdict. Based on these discussions, counsel fashioned a form affidavit and presented it to each individual juror for signing and notarization. The affidavit stated among other things that the jury found plaintiffs' total damages to be $961,340, and it was their intention to award plaintiffs $96,134 based on Koontz's ten percent comparative fault. The Weatherwaxes then filed a motion to reform the verdict so as to comply with the intent of the jury. The form affidavits signed by all jurors were submitted with the motion. The motion was later amended to seek a new trial as an alternative.

The trial judge promptly summoned counsel and asked for suggestions from both sides regarding how to proceed in the matter. The judge concluded an evidentiary hearing was proper and invited both counsel to submit suggested questions in writing for consideration by the jurors. At the hearing the trial judge questioned the jurors and each seemed to indicate the $96,134 damage award was a portion of some larger amount. There was however no consensus on what this larger amount was, other than that the jury agreed on $96,134 in damages after considering comparative fault. The district court ruled:

> There remains the issue with regard to whether the jury's misunderstanding of the court's instructions resulted in the verdict rendered by them. Therefore, the motion as amended is overruled in its entirety. This determination is premised on the fact that there was not a consensus determination by the jury with regard to the basis upon which to reform the verdict or grant a new trial with regard to the damage issue.

Thus the district court accepted the jury verdicts and entered judgment against Koontz in the amount of $96,134. The Weatherwaxes appealed.

The appropriateness of any inquiry into jury deliberations is a legal question which we review on error. Iowa R.App.P. 4; *Lund v. McEnerney*, 495 N.W.2d 730, 732 (Iowa 1993). The trial court's ruling on the motion for new trial was discretionary, and we reverse only on a finding of abuse. Iowa R.App.P. 14(f)(3); *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 13 (Iowa 1990).

I. The underlying question—what deliberative matters, because they inhere in the verdict, are inappropriate for judicial scrutiny—may seem more substantive than evidentiary. Most courts, including our own, nevertheless more commonly approach the question as an evidentiary one. In other words, the policy which protects the finality of jury verdicts is approached as an evidentiary issue, but the evidentiary approach demonstrates how strongly the courts view the policy in which the approach is grounded. *Lund*, 495 N.W.2d at 733–34; *Prendergast v. Smith Lab., Inc.*, 440 N.W.2d 880, 884 (Iowa 1989); *Ryan v. Arneson*, 422 N.W.2d 491, 494–95 (Iowa 1988); Iowa R.Evid. 606(b). *See* Annotation, *Competency of Juror Statement or Affidavit to Show That Verdict in Civil Case Was Not Correctly Recorded*, 18 A.L.R.3d 1132 (1968). These and a host of other authorities make it clear that a juror's testimony can be received to show that (1) a verdict was not correctly recorded or (2) external matters were improperly brought into deliberations. It cannot be received to show the jury's thinking processes were incorrect. *State v. Rouse*, 290 N.W.2d 911, 916–17 (Iowa 1980). Except for the rare exceptions already noted, evidence is inadmissible to impeach a jury verdict. *State v. Johnson*, 445 N.W.2d 337, 341 (Iowa 1989) ("conduct or occurrences which are within tolerable limits are said to 'inhere in the

verdict' or constitute no grounds for 'impeachment of the verdict' "); *Harris v. Deere & Co.,* 263 N.W.2d 727, 730 (Iowa 1978) (same).

■ II. Courts become decreasingly inclined to allow impeachment of a verdict after discharge and dispersal of a jury. In *Rutledge v. Johnson,* 282 N.W.2d 111 (Iowa 1979), a case involving a sealed verdict under Iowa rule of civil procedure 203(c), we approved the recall of a dispersed jury, but carefully limited that authority to apply only for two classifications of what we described as "amendable omissions." The first, involving ministerial errors, applied only where (1) the form of the sealed verdict resulted from inadvertence or clerical errors, and (2) proof of the ministerial nature of the mistake was clear and inescapable. 282 N.W.2d at 114. The second class of amendable verdicts involves situations where the jury, before separating, reached a decision it inadvertently failed to record. *Id.* at 115.

■ The present case does not qualify under either *Rutledge* classification. It does not match the first classification because it was not an inadvertent or clerical error. If anything, under plaintiffs' version of the facts, it was a misapplication of the law to the facts. As such, any further inquiry into the subject would improperly intrude into the juror's thinking processes. Neither do we think the present facts qualify under the second *Rutledge* classification because, even under plaintiffs' version of the facts, the jury cannot be said to have unanimously agreed on the decision plaintiffs claim, and inadvertently misrecorded that decision.

In *Prendergast,* consistently with the *Rutledge* decision, we held the challenged jury verdict could not be reformed, but that there was no abuse in the trial court's alternative grant of a new trial. 440 N.W.2d at 883–84. The facts here are even stronger for refusing to reform the verdict than those in *Prendergast* where the jurors, though discharged, were still in the courthouse when informally

questioned by counsel for both parties and the court attendant. *Id.* at 882. The jury here was dispersed before first being questioned ex parte by counsel for the plaintiffs.[1] In many jurisdictions the fact of dispersement would end any authority to impeach the verdict. 75B Am.Jur.2d *Trial* §§ 1895–96 (1992); *see also* David J. Marchitelli, Annotation, *Propriety of Reassembling Jury to Amend, Correct, Clarify, or Otherwise Change Verdict After Discharge or Separation at Conclusion of Civil Case,* 19 A.L.R.5th 662 (1994).

To sum up, we have grave doubts concerning the admissibility of the juror affidavits or testimony as impeachment of the verdict here. Our *Prendergast* and *Rutledge* holdings mark the outer limits of acceptable inquiry. Our *Ryan* and *Rouse* holdings will govern most future situations and preclude nearly all attempts to revisit jury verdicts. But we can pass these grave doubts in the present case because we need not decide the admissibility of the affidavits or juror statements at the posttrial hearing. At the hearing three different views were espoused concerning whether the jury made a determination of the plaintiffs' total damages. One juror stated a total figure of $961,340 was discussed, another claimed the figure was $697,000, and still others contended no damage amounts were agreed upon other than the $96,134. The record falls far short of revealing any conclusive finding by the jury of a larger amount than that entered as a verdict. Hence the motion for reformation of the verdict was correctly denied.

■ III. Regarding the alternative motion for a new trial, the court was entitled to reject the posttrial affidavits and rely on any admissible evidence adduced at the posttrial hearing. It was required to reject any evidence prohibited by rule of evidence 606(b) (internal thought processes of the jurors). After doing so there was nothing requiring the court to believe the agreed verdict was inconsistent with the one recorded.

---

1. Defendant is skeptical of the affidavits. He questions their accuracy because of the manner in which they were solicited and because they were mere forms. We agree that the affidavits' credibility was not enhanced by the circum-

stances, but any skepticism is ameliorated because the court acted, not on the affidavits, but rather on the facts developed at the posttrial hearing.

The Comparative Fault Act provides guidelines for informing the jury regarding assessment of fault and the effect of their findings.[2] We mentioned the importance of following these guidelines in *Cowan v. Flannery*, 461 N.W.2d 155, 160 (Iowa 1990) ("trial court should not discharge jury until it determines ... verdict is consistent and supported by evidence"). We again emphasize the importance of satisfying the statutory guidelines when submitting a comparative fault case to a jury and when receiving the verdict.

The trial court in this case was in the ideal position to assess whether the jury verdict was in conformance with the law. We find no abuse in the trial court's refusal to grant a new trial. We therefore conclude that the judgment of the trial court should be affirmed. The court of appeals decision to the contrary must be vacated.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

2. Iowa Code § 668.3 provides in material part:
  (5) If the claim is tried to a jury, the court shall give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section.
  (6) In an action brought under this chapter and tried to a jury, the court shall not discharge the jury until the court has determined that the verdict or verdicts are consistent with the total damages and percentages of fault, and if inconsistencies exist the court shall do all the following:
  a. Inform the jury of the inconsistencies.
  b. Order the jury to resume deliberations to correct the inconsistencies.
  c. Instruct the jury that it is at liberty to change any portion or portions of the verdict to correct the inconsistencies.