LCI, INC., an Iowa Corporation, and Michael F. Sharar, Appellants,

v.

Delmar J. CHIPMAN, Shirley G. Chipman, and Agents Insurance Group, Inc., Appellees.

No. 96–926.

Supreme Court of Iowa.

Dec. 24, 1997.

David William Patton, Storm Lake, for appellants.

Frank J. Comito of Neu, Minnich, Comito & Hall, P.C., Carroll, and Colin J. McCullough of McCullough Law Firm, Sac City, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

LARSON, Justice.

When a dispute arose under an installment contract for the sale of an insurance business, the parties agreed to submit the matter to arbitration. *See* Iowa Code ch. 679A (1995). The arbitrators awarded some relief to each side. The sellers petitioned the district court to vacate the award under Iowa Code section 679A.12. The district court denied the petition to vacate, and the sellers appealed. We affirm.

LCI, Inc. and Michael F. Sharar (sellers) sold an insurance business to Delmar Chipman, Shirley Chipman, and Agents Insurance Group, Inc. (buyers) under a 1988 agreement as amended in 1990. The purchase price was based on commission income generated by customer accounts multiplied by 1.35, plus a price for the fixed assets. At the time of the contract, the estimated purchase price, based on that formula, was approximately $66,000, with the actual purchase price "to be verified by year end company statements."

When a balloon payment became due and unpaid, the sellers sued for the balance they claim was owed. They also sued for the amount of commission checks they claim had been converted by the buyers. The buyers, in their answer, responded that the sellers' own breach of the contract barred their re-covery; however, they did not include a counterclaim to make this assertion.

A week before trial, the parties signed an arbitration agreement, which provided in part:

> The parties will present to the Arbitration Panel for resolution the claims presented by the Petition and the Answer filed in this case, the central issue being the amount, if any, that Delmar J. Chipman and Shirley G. Chipman owe Michael F. Sharar under their agreement to purchase certain assets of LCI, Inc.

The parties chose three insurance representatives as arbitrators. By a two-to-one vote, the arbitrators awarded the sellers $1299.48 on their claim against the buyers. This amount, however, was more than offset by $9000 for damages on the buyers' claim for breach of the covenant not to compete. The net recovery to the buyers was $7700.52.

The sellers first argue that the offset based on the breach of covenant was beyond the scope of arbitration because that issue had not been raised by the buyers. (The buyers' answer had alleged as an affirmative defense that "[p]laintiff has breached the contract and that breach is a complete bar to this action," but the answer did not specifically assert that this "breach" involved the covenant not to compete, nor did it contain a counterclaim.) If an issue is beyond the scope of arbitration and the arbitrators have exceeded their powers in addressing it, this is a ground for vacation of the award. *See* Iowa Code § 679A.12(1)(c). This raises the first issue: Was the claimed breach of the covenant not to compete properly before the arbitrators?

## I. Scope of the Arbitration.

■ A. *The covenant not to compete.* As discussed above, the parties submitted for arbitration "the claims presented by the Petition and the Answer filed in this case." The sellers claim that this did not raise the covenant breach or the buyers' separate request for damages. However, this court has stated, in an analogous case involving arbitration under a collective bargaining agreement, that

[t]he threshold question in reviewing an arbitrator's award is to determine whether the issue in dispute is one which the parties had agreed to settle by arbitration. A broad approach to arbitrability was announced by the *Steelworkers* trilogy:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Sergeant Bluff–Luton Educ. Ass'n v. Sergeant Bluff–Luton Community Sch. Dist.*, 282 N.W.2d 144, 147–48 (Iowa 1979) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417–18 (1960)). We believe the same broad scope of inclusion should apply to arbitration under chapter 679A.

In the opening statements to the arbitration panel, the buyers' attorney stated "[i]t's my understanding that the plaintiff [seller] in this case is seeking a judgment, as well as [the buyer] is seeking a reduction in that judgment and his own set-off judgment." The sellers' attorney did not object to this statement of the scope of arbitration, and the parties proceeded to present evidence on all of the issues, including the covenant. Analogizing to Iowa Rule of Civil Procedure 106, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

■ We conclude that the buyers' claim for the breach of the covenant was within the powers of the arbitrators to resolve and thus not a ground for vacation of the award. We base this conclusion on (1) a pragmatic reading of the buyers' answer, which raised the issue of the sellers' breach of the agreement in general terms; (2) our broad view of the scope of arbitration as noted in *Sergeant Bluff–Luton,* 282 N.W.2d at 147–48; (3) the apparent acquiescence of the sellers, as evidenced by their failure to object to the buyers' statement of the scope of arbitration in their opening statement; and (4) the fact that the issue was clearly "tried" by consent.

■ **B.** *The "penalty" award.* The arbitrators' original award included a $9000 recovery against the sellers for their breach of the covenant not to compete. The award stated:

> We the panel have assessed a *penalty* to [the seller in] the amount of nine thousand ($9,000) for breach of the non-compete agreement within the contract.

(Emphasis added.)

The sellers filed an application to vacate the award on the ground that awarding a penalty was outside the scope of the arbitrators' authority. The court then remanded the award to the arbitrators to answer these questions:

> (1) Was the $9,000 award (A) intended to punish [a seller] for breaching the non-compete agreement; or (B) intended to compensate [the buyers] for damages they suffered because of [a seller's] breach of the non-compete agreement.
>
> [The panel responded "B."]
>
> (2) If you answered Question 1 with "B," please describe the damages you intended to compensate and how those damages differed from those compensated by [another portion of the award].

The panel (by a two-to-one majority) responded that the award was intended to constitute actual damages as compensation to the buyers. The arbitrators provided these details:

> The $9,000 figure was arrived at by first determining the total purchase price. Thereafter, adjustments were made to reach the figure of $60,000. As testified by [the buyers], a premium price was paid by [the buyers] in order to get the non-compete agreement. The premium as determined by the arbitrators was 15%. The multiplier agreed to by the parties was 1.5% of the total purchase price and we accordingly assessed 15% of the purchase price or $9,000 as damages. We computed this because [the buyers were] wrongly induced into paying a premium by the non-compete agreement which was subsequently breached by [a seller].

Accordingly, we awarded $9,000 ... additional damages because in our [opinion] we believe that [the buyers were] damaged by this amount based upon a misplaced reliance, as well as [a seller's] failure to abide by this non-compete agreement.

We conclude that the award for breach of the covenant not to compete was in fact compensatory, not punitive, and was therefore within the powers of the arbitrators to resolve the issue. (The sellers also complain that the arbitrators erroneously applied a "multiplier" of 1.5 times the purchase price instead of 1.35 as provided by the contract in assessing damages for the breach of the covenant. We discuss that issue separately in Division III.)

## II. *Sufficiency of the Evidence.*

The sellers contend that the arbitrators' award lacked any substantial evidence to support it. At common law, this was not a ground for vacation of an award. *See* 6 C.J.S. *Arbitration* § 162, at 428–49 (1975) (footnotes omitted) ("Except as provided by statute, the merits of the controversy, both as to law and facts, may not be reviewed or determined by the court."). Nor is the insufficiency of the evidence a ground for vacation of an award under the Uniform Arbitration Act. *See Unif. Arbitration Act* § 12, 7 U.L.A. 316 (1997) (lists grounds for vacation of an award; does not include insufficiency of the evidence).

The Iowa legislature, however, in enacting the uniform act, modified it by providing that an award shall be vacated if

> [s]ubstantial evidence on the record as a whole does not support the award. The court shall not vacate an award on this ground if a party urging the vacation has not caused the arbitration proceedings to be reported, if the parties have agreed that a vacation shall not be made on this ground, or if the arbitration has been conducted under the auspices of the American arbitration association.

Iowa Code § 679A.12(1)(f); *see also Humphreys v. Joe Johnston Law Firm, P.C.,* 491 N.W.2d 513, 515 (Iowa 1992).

We have held that, under section 679A.12(1)(f), evidence is substantial if a reasonable person would accept it as sufficient to reach a conclusion. *Humphreys,* 491 N.W.2d at 516 (citing *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990)). With these principles in mind, we look to the issues regarding the sufficiency of the evidence.

■ A. *The accounts included in the sale.* The sellers complain that the arbitrators should not have considered three insurance accounts, which, according to them, were not intended to be transferred to the buyers. However, there was substantial evidence to support the arbitrators' consideration of those accounts, primarily the sale agreement itself, which stated that it covered *"[a]ll* expirations, customer lists and customer files for both [the] Lytton and Storm Lake offices." (Emphasis added.) The three accounts in question fell within this broad class. "Exhibit P," a list of accounts that did not include the three accounts, was prepared by the sellers after this dispute arose, and the arbitrators were justified in giving little weight to it.

■ B. *The "ninety percent rule."* Based on the arbitrators' own experiences in the insurance business, they concluded that, according to "industry experience, 90% of the business would be renewed and stay with the new owners." The arbitrators used this percentage in computing damages against the sellers on the buyers' breach-of-covenant claim. The sellers complain that the arbitrators' use of this percentage was improper because it was "without a scintilla of support in the record." However, the personal knowledge of the arbitrators with respect to the practices and customs of the industry was presumably part of the parties' rationale in selecting three insurance representatives as arbitrators. As one court has noted,

> [i]n trade disputes one of the chief advantages of arbitration is that arbitrators can be chosen who are familiar with the practices and customs of the calling....

*American Almond Prods. Co. v. Consolidated Pecan Sales Co.,* 144 F.2d 448, 450 (2d Cir.1944).

> It is a general rule that arbitrators who are selected on the basis of special fitness or knowledge in the field to which a dis-

pute relates, with the evident intention that the process of arriving at a decision should include the exercise of such special skill in a manner supplementary to such facts, if any, as may be established, may, in the absence of other restrictions or controlling evidence, rely wholly or partially on their own knowledge, or on information acquired through a proper use of such knowledge and personal observation or investigation. If it appears that the parties intended that the arbitrators should exercise their special qualifications so as to completely cover the matter in dispute, the arbitrators may properly refuse to hear other evidence. Arbitrators who are selected because of special fitness or knowledge in the field in which the dispute lies may give evidence the same as other competent witnesses as to relevant matters either within their knowledge and experience or acquired through independent investigation.

4 Am.Jur.2d *Alternative Dispute Resolution* § 169, at 197 (1995) (footnotes omitted).

The panel's expertise regarding the ninety percent rule was properly a part of the record on which it based its award.

### III. *The "Mathematical Mistake."*

In the arbitrators' award of damages for breach of the covenant not to compete, they apparently applied a "multiplier" of 1.5 to the actual value of the accounts they found to have been taken in violation of a covenant. The sellers contend that this is an obvious mistake, one that requires the vacation of the award because the parties' contract provided for only 1.35 as a multiplier.

Iowa Code section 679A.13 provides for modification or correction (as opposed to *vacation*) of an award under certain circumstances including when

[t]here is an evident miscalculation of figures or an evident mistake in the description of a person, thing, or property referred to in the award.

The sellers do not ask for a modification or correction under section 679A.13; in fact, they do not even cite this section. Rather, they ask that the whole award be vacated.

However, it does not appear that in the totality of the circumstances surrounding the arbitrators' determination of damages that the entire award should be set aside. The calculation of damages for the arbitrators, as for a jury, is not an exact science. For example, the arbitrators apparently assumed that fifteen percent of the purchase price was attributed to the covenant not to compete, and they also, more or less arbitrarily, assessed damages on the basis of two years' "stolen" business, rather than for a longer period as the buyers believe they should have.

■ It is said that review of an arbitrator's award under an arbitration statute is "akin to that of a verdict of a jury." 6 C.J.S. *Arbitration* § 162, at 430. Using that parallel, we believe the panel's consideration of a multiplier of 1.5 instead of 1.35, as well as its apparent application of a fifteen percent value on the covenant and the two-year limitation on the period of time for the allowance of damages all "inhered" in the award and may not be the basis for setting it aside. *Cf. Weatherwax v. Koontz,* 545 N.W.2d 522, 524 (Iowa 1996) (matters inhering in jury verdict); *Schwennen v. Abell,* 471 N.W.2d 880, 888 (Iowa 1991) (same); *see also* Iowa R. Evid. 606(b). The award itself was supported by substantial evidence.

■ We make one other observation: subjecting arbitrators' awards to the degree of scrutiny on judicial review advocated by these sellers would be inconsistent with the rationale underlying the concept of arbitration. As we have said,

"arbitration decisions are not ... closely scrutinized. A refined quality of justice is not the goal in arbitration matters. Indeed such a goal is deliberately sacrificed in favor of a sure and speedy resolution. Under our common-law view the purpose of arbitration is to end disputes without court participation. It is no idle coincidence that the words 'arbitration' and 'arbitrary' are both derived from the same Latin word."

*Humphreys,* 491 N.W.2d at 515 (quoting *Reicks v. Farmers Commodities Corp.,* 474 N.W.2d 809, 811 (Iowa 1991)). While the

view expressed in *Humphreys* is characterized there as a "common-law view," that case involved statutory arbitration under Iowa Code chapter 679A. We believe the rationale underlying the arbitration process under chapter 679A does not require the refined quality of justice that would be found in a court proceeding.

We find no merit in any of the assignments of error and therefore affirm.

**AFFIRMED.**