# IN THE COURT OF APPEALS OF IOWA

No. 21-0888
Filed April 13, 2022

**MICHAEL M. SELLERS,**
        Petitioner-Appellant/Cross Appellee,

**VS.**

**AMIT GUPTA,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie Kunkle Vaudt,

Judge.


        In an attorney-client fee dispute, the attorney appeals from the district

court's confirmation of an award decision from the Polk County Bar Association

Attorney Fee Arbitration Committee. **AFFIRMED.**



        James L. Sayre, Des Moines, for petitioner-appellant/cross-appellee.

        Amit Gupta, Los Angeles, California, self-represented respondent-

appellee/cross-appellant.



        Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Following a fee dispute, Michael Sellers and his former client, Dr. Amit Gupta, entered arbitration before the Polk County Bar Association Attorney Fee Arbitration Committee (Arbitration Committee).[1]  Sellers asserts one of the Arbitration Committee panel members had a conflict of interest and, because of this evident partiality, the award should be vacated.  Alternatively, he argues the Arbitration Committee exceeded its powers by determining the quality of his legal representation for Gupta.  Gupta cross-appeals, arguing that the district court should have awarded him prejudgment interest, attorney fees, and costs.  Because Sellers waived his challenge to the Arbitration Committee's potential conflicts and the Arbitration Committee did not exceed its powers, and because the district court did not abuse its discretion by declining to award Gupta attorney fees and costs, we affirm the district court's confirmation of the arbitration award.

**Background Facts and Proceedings.**

This case arises out of an attorney-fee dispute between Sellers, an Iowa attorney, and Gupta, a medical doctor.  Gupta hired Sellers to help with various issues.  Gupta had been found guilty by a jury of a simple misdemeanor and sentenced to a deferred judgment and probation.  He hired Sellers in November 2016 to help manage any disclosures that would be necessary to the Iowa Board of Medicine, which might impact Gupta's physician status.

Around the same time, Gupta was also embroiled in a divorce proceeding, and he asked for Sellers's counsel when his now ex-wife subpoenaed his current

---

[1] The Polk County Bar Association developed a process to allow parties to pursue alternative dispute resolution to resolve attorney-fee disputes.

employer in California, seeking financial documents and personnel records. According to Gupta, Sellers told him his current counsel was doing a poor job and that the consequences could impact his job and medical licensure. Sellers seemed confident he could finish the work for $10,000–$15,000. And after a wayward email in July 2017 from Sellers to Gupta's counsel caused that counsel to withdraw from the case,[2] Sellers encouraged Gupta to hire him. Gupta, trusting Sellers's experience and knowledge, did so.

That August, as Sellers was getting more involved in the divorce proceedings, Gupta completed his probation as ordered in the criminal case. The case was dismissed and expunged; still, Sellers did not believe this was enough to prevent any career consequences Gupta could face. Sellers filed several motions and an application for postconviction relief (PCR), a remedy not available when the sentence results in a deferred judgment.[3] He filed other motions about the criminal matter in the dissolution proceedings, which the dissolution court said was an improper venue to disturb a jury verdict in a different case. While Gupta testified that it was complicated to decipher because of Sellers's billing model, it seemed that one such motion Sellers claimed could be done quickly and at minimal cost ended up costing around $20,000. Gupta explained he struggled to tell Sellers no because he would take the comments personally.

---

[2] The email, which Sellers intended to send to Gupta but accidentally sent to counsel, referred to Sellers and Gupta as "the parents" and the other counsel as "the kids."

[3] Gupta had previously sent Sellers a case, *Daughenbaugh v. State*, 805 N.W.2d 591, 598 (Iowa 2015), which explained PCR was unavailable following a deferred judgment.

Still represented by Sellers, Gupta's divorce trial occurred in March 2018. Gupta testified that he wrote his own pre-trial brief and he and Sellers had agreed he would similarly write the post-trial brief. In May, when Gupta received his bill, he was taken aback by the charges and total cost and decided he could no longer afford Sellers's representation. In an email, Gupta explained that the cost was prohibitive and asked Sellers to withdraw and let him continue on his own, especially since the judge said post-trial briefs were optional.[4] Sellers responded that he still had to file a post-trial brief and would finish it; Gupta claims Sellers told him the work would be done at no charge as Gupta made it clear he was unwilling to pay for further legal work. Sellers says he made no such promise and time continued to be billed to Gupta—$19,200 after Gupta's email.

Gupta began re-analyzing the bills he had been sent—they totaled more than $300,000—and challenged Sellers on some charges. He had paid more than $250,000, but the invoices showed $56,120.38[5] in outstanding legal fees. In November 2018, when Gupta had not paid the balance, Sellers sued for debt collection. But, that December, the parties filed a stipulated motion to dismiss without prejudice and moved the case to an alternative dispute resolution process through the Arbitration Committee.

The arbitration occurred in September 2019. At the onset of the hearing, one of the committee members, attorney Mark Weinhardt, stated that he had a potential conflict he wanted to address with the parties and other committee

---

[4] In the dissolution trial, the court said it did not think it needed post-trial briefs but the parties could file them if they wanted.

[5] The original amount was $1000 greater, but Sellers agreed there was one duplicative charge and adjusted appropriately.

members. He talked it over with the committee members before the meeting, and then recapped his discussion on the record for the parties:

> In Dr. Gupta's materials he made reference to other fee disputes with other clients involving Mr. Sellers. One of those involved a physician named [Dr. P].[6] I represented [Dr. P] not in the litigation with Mr. Sellers over the fee dispute, but I took over the representation of [Dr. P] in the underlying matter where Mr. Sellers had previously been counsel.
> I stated my judgment that I did not think with reference to the standards that would apply to judicial recusal, which is what I adopt by analogy, that my knowledge about that collateral fee dispute would disqualify me from participating here, but we then put this to both of the litigants in this proceeding, which we should probably [do that on] the record.

Both Gupta and Sellers affirmatively and without reservation said they did not object to Weinhardt's participation in the panel.

As the arbitration hearing went forward, Gupta argued not only that he did not believe he should have to pay Sellers the final amount, but that he was entitled to a complete refund. He testified Sellers agreed to only do work after Gupta signed off on it to keep costs down but pointed to charges he had not pre-authorized. Gupta provided evidence comparing time stamps from word documents to the bills sent, which showed large discrepancies in the time spent working on given tasks. He also commented on tasks he thought were wasteful or meritless, such as the continuing motions about his criminal case in the dissolution court after the court had said it would not overturn the jury verdict,[7] but were done in lieu of things Gupta specifically asked him to do, such as serving subpoenas. And while Sellers had pointed to his experience when Gupta hired him, Sellers had

---

[6] For the sake of anonymity, we refer to the other doctor as Dr. P.

[7] An email from Sellers states: "[A]s a matter of law, you cannot retry a completed criminal case when it has not been appealed. Watch me do it anyway."

not handled a divorce proceeding in at least ten years, requiring him to spend time researching well-established law. Ultimately, though, Gupta said it was difficult to assess an exact number he was charged for these challenged services because of Sellers's use of block billing, where multiple tasks were lumped together for one chunk of time—for instance, a four-hour time period might include six different tasks with no indication of how long each took individually.

Seeking to establish a pattern by Sellers, Gupta provided evidence from other clients who had similar experiences with Sellers. One such client testified about the final cost being far above the initial estimate, work being redundant or wasteful, and important steps being missed. Gupta made reference, in his testimony, to the case of another doctor, Dr. P, who was similarly suing Sellers for charging her after she terminated his representation—that underlying case was the one taken over by Weinhardt.[8]

Sellers, for his part, argued the bills had been sent to Gupta throughout the case and he had not objected to them before now, noting that the representation agreements required that the client would "agree[] to review each billing statement promptly and address any objection or error in a timely manner."

The Arbitration Committee, in its November 2019 decision, agreed with Gupta that he had been overcharged. After considering the quality and need for the work done, it found Gupta had been billed for wasted time in both the divorce and the criminal matter. It also found that Sellers's hourly rate in the divorce proceedings specifically, given his lack of recent experience and compared to the

---

[8] Gupta submitted a copy of the counterclaim to show Dr. P's allegations, which included overcharging her and claims of negligence in the representation of her.

amount of money at stake in the dissolution, was either excessive or unreasonable. Overall, the Arbitration Committee determined Gupta need not pay the remaining balance and was entitled to a refund of $111,000 from Sellers.

At some point after the arbitration hearing, Sellers reviewed pleadings in the Dr. P attorney-fee collection case and discovered a May 21, 2018 memorandum written by Weinhardt. The memorandum, in no uncertain terms, criticized Sellers's representation of their mutual client. And, Sellers asserts, the memorandum contained common language with the ultimate ruling of the Arbitration Committee. Around that same time, Sellers claims he discovered Weinhardt was listed, in an August 2018 filing, as a potential witness in this separate fee dispute with "information regarding [Sellers's] handling of the prior litigation." Sellers filed a request for a rehearing with a new panel and a motion to reconsider the findings. For other reasons, Gupta filed his own application for review of the award, asking for prejudgment interest, costs, and attorney fees and for the awarded refund to be increased.

In response, the Arbitration Committee maintained that Weinhardt had not been required to recuse himself under the Arbitration Committee's rules, and that as Weinhardt has disclosed his connection with the other case and Sellers had assented to his continued participation on the panel, Sellers had waived any potential conflict-of-interest claim. It denied all other motions.

In February 2020, Sellers moved to vacate the award with the district court under Iowa Code section 679A.12 (2020). Sellers continued to argue the award should be vacated, and Gupta sought prejudgment interest, attorney fees, and costs.

In April 2021, the district court denied the motion to vacate and confirmed the arbitration award, but it did not award prejudgment interests, attorney fees, or costs. Both parties filed motions under Iowa Rule of Civil Procedure 1.904 to reconsider, enlarge, or amend, which the district court denied.

**Discussion.**

Appeals from an arbitration are "taken in the manner and to the same extent as from orders or judgments in a civil action," Iowa Code § 679A.17(2), so we review for correction of errors at law. *See Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.23d 832, 839 (Iowa 2007). But because the law views arbitration favorably as a way to avoid cost and delay, our review is limited and we do not wade into the waters of "whether the arbitrator has correctly resolved the grievance." *Id.*; *see $99 Down Payment, Inc. v. Gerard*, 592 N.W.2d 691, 694 (Iowa 2007) ("To allow courts to 'second guess' an arbitrator by granting a broad scope of judicial review would nullify the very advantages of arbitration."); *Reicks v. Farmers Commodities Corp.*, 474 N.W.2d 809, 811 (Iowa 1991) ("A refined quality of justice is not the goal in arbitration matters. . . . It is no idle coincidence that the words 'arbitration' and 'arbitrary' are both derived from the same Latin word." (citations omitted)). "As long as an arbitrator's award does not violate one of the provisions of section 679A.12(1),[9] we will not correct errors of fact or law." *Ales*, 728 N.W.2d at 839.

---

[9] Applicable to this case, section 679A.12(1)(b) and (c) allow for vacation of an award when (1) "There was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of a party," or (2) "The arbitrators exceeded their powers."

On appeal to our court, Sellers argues the award should be vacated because (1) one of the Arbitration Committee members showed partiality and (2) the arbitrators went beyond their powers in determining that Sellers's legal work was inept.  For his part, Gupta cross-appeals and argues that (3) the district court should have imposed prejudgment interest and (4) should have awarded him attorney fees and costs.

**1. Arbitrator's Potential Conflict.**

The district court ruled that Sellers waived his right to object to Weinhardt's presence on the Arbitration Committee panel.  Sellers disagrees, stating that while he knew Weinhardt was involved in the other doctor's case, he did not know the role Weinhardt was poised to play in the fee-dispute case between himself and the other doctor.  He argues that despite his counsel having access to the materials, he did not see the memorandum from Weinhardt or his place on the witness list in the other doctor's fee case until after the arbitration hearing over his fee dispute with Gupta.  Weinhardt, Sellers contends, should have recused himself as soon as he saw this case included Sellers.

We start with the agreed upon rules surrounding this arbitration.  The Arbitration Committee's rules state: "No member of the Committee shall act in any dispute involving themselves, a relative, a member of their firm, or a current client of their firm.  Committee members may also recuse themselves, or offer to recuse themselves, if they perceive any other possible conflict."  Appreciating a "possible conflict," Weinhardt was in accordance with the rules by simply offering to recuse himself.  But, we still must evaluate the claim under section 679A.12(1)(b) because one path to vacating an arbitration award is to show "evident partiality by an

arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of a party." Sellers asks us to travel that path.

There are limited cases dealing with the definition of "evident partiality" under section 679A.12(1)(b). In one case where an attorney challenged the neutrality of an arbitrator on this committee, we noted that the United States Supreme Court, in evaluating the United States Arbitration Act, did not hold arbitrators to as high of a standard as a judge. *See McCleary v. Eckley*, No. 12-2156, 2014 WL 3928875, at *2 (Iowa Ct. App. Aug. 13, 2014); *see also Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150 (1968) (White, J., concurring) ("The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. . . . . This does not mean the judiciary must overlook outright chicanery in giving effect to their awards; that would be an abdication of our responsibility. But it does mean that arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." (internal citation omitted)). Yet, in that same Supreme Court case, the court cited to "an Arbitration Association rule and the Canon of Judicial Ethics requirement that those trying cases or controversies 'not only must be unbiased but also must avoid the appearance of bias.'"[10] *McCleary*, 2014 WL 3928875, at

---

[10] But for the waiver, here, if we examine the arbitrator's conduct as requiring "impartiality and avoiding the appearance of impropriety, but '[o]nly personal bias or prejudice is a disqualifying factor,'" the disqualification becomes a closer question. *McCleary*, 2014 WL 3928875, at *2 (quoting *In re C.L.C. Jr.*, 798 N.W.2d 329, 336 (Iowa Ct. App. 2011) (alteration in original)). In the arbitration record, Gupta developed a theme that Sellers's behavior in his case was part of a pattern

*2 (quoting *Commonwealth Coatings*, 393 U.S. at 149–50). But, while arbitrators do have ethical boundaries, they are not judges and by virtue of their role have different circumstances impacting them. *See Commonwealth Coatings*, 393 U.S. at 148–49. ("It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases . . . . [But w]e can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias."). Here, Weinhardt offered to recuse himself based on his ties to Sellers's previous client and Sellers waived that action.

In one other case involving an arbitrator's evident partiality, a panel of this court also addressed whether to vacate the arbitration award. *See Kanis v. T.D. Eilers Constr. Co., Inc.*, No. 01-2041, 2003 WL 118475, at *6 (Iowa Ct. App. Jan. 15, 2003). The district court refused to vacate the award after it determined that observations of an arbitrator speaking with one of the parties during breaks was not sufficient evidence of partiality. *Id.* at *3. Our court affirmed the district court's decision, in part because even when evaluating evident partiality, we afford "every reasonable presumption . . . in favor of the legality of an arbitration award." *First Nat'l Bank v. Clay,* 2 N.W.2d 85, 91 (Iowa 1942). To that end, we note the

---

in many other of his cases. Weinhardt's knowledge of those issue with Dr. P was more detailed and extensive than the details in the record before the Arbitration Committee. Without Sellers waiving Weinhardt's recusal, that knowledge and the appearance of impropriety related to his role as a witness in the Dr. P case would compel Weinhardt to disqualify himself from the proceedings. *Cf.* Iowa Code § 602.1606(1)(a) (disqualifying a judge who has personal knowledge of disputed evidentiary facts from acting in a proceeding unless the parties consent).

Arbitration Committee's decision zeroed in on specifics of Sellers's representation of Gupta—not any of Sellers's other dealings—and the fair charges for those services, which provided substantial evidence to support its award without any reference to other fee disputes raised.

Still, the limited case law that defines the contours of "evident partiality" in arbitration is not a barrier in this case. Sellers does not deny that his counsel was aware of Weinhardt's involvement in the Dr. P fee dispute at the time of the arbitration hearing, but instead argues that it is irrelevant because Sellers did not know personally until January 2020—after the Arbitration Committee issued its decision. And while Sellers is correct in asserting that a basic element of waiver is knowledge, *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982), our courts have historically held the knowledge of counsel, as agent of the client, is imputed to that client. *Robinson v. State*, 687 N.W.2d 591, 594–95 (Iowa 2004); *see also Farnsworth v. Hazelett*, 199 N.W. 410, 411 (Iowa 1924) ("In the employment of an agent and the creation of obligations thereunder, it must be borne in mind that the principal must take account, not only of his own will, but also of the will of the agent, and, within certain limitations, not only his own knowledge, but the knowledge of the agent. . . . The general rule that knowledge of the attorney is chargeable to the client cannot be questioned.");[11] *Jones v. Bamford*, 21 Iowa 217, 219 (Iowa 1866) ("The knowledge or notice of facts acquired by an attorney or agent when engaged properly in the business of his client or principal,

---

[11] *Farnsworth* also provides four exceptions to the rule, none of which apply here. 199 N.W. at 412; *see also Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 888 (Iowa 1981).

becomes, in law, the knowledge or notice of such fact to the client or principal."). Weinhardt was listed as a potential witness in the Dr. P case in August 2018, long before the arbitration hearing in September 2019. And Weinhardt's characterization of Sellers's legal work was being evaluated by an expert hired by Sellers for the Dr. P case the same week as the arbitration hearing took place. Even if Sellers truly did not personally know that Weinhardt was involved in the Dr. P fee dispute, his attorneys had for some time, and that knowledge is imputed to him.[12]

To address the waiver issue head on, Sellers next argues that section 679A.12(1)(b) does not contemplate a waiver of evident partiality, but instead mandates that a court vacate the judgment if it exists. He points to the language of the statute, which says "Upon application of a party, the district court shall vacate an award if . . . [t]here was evident partiality by an arbitrator appointed as a neutral . . . ." Iowa Code § 679A.12(1)(b). The word "shall" is typically used in a mandate. *$99 Down Payment*, 592 N.W.2d at 694. Still, "[t]he absence of an express waiver provision in the governing statute is not determinative." *State v. Gomez Garcia*, 904 N.W.2d 172, 179 (Iowa 2017) (allowing for the waiver of a statutory right to an interpreter). In *Whitwer v. Civil Service Commission*, our supreme court determined that an individual could waive a right to appeal in part because the chapter bestowing the right did not expressly bar waivers and because an appeal is made by the choice of the individual. 897 N.W.2d 112, 119 (Iowa 2017); *see also Gomez Garcia*, 904 N.W.2d at 179 (collecting statutes that

---

[12] The district court found that Sellers was on notice in a January 2021 order on a discovery motion.

prohibit a waiver). These circumstances are also present here. Nothing in chapter 679A prevents a party from waiving the statutory rights it creates. And, the parties are the ones who ask for the arbitration award to be vacated. Therefore, they are able to waive the objections they might wish to use in that endeavor. *See Dacres v. John Deere Ins. Co.*, 548 N.W.2d 576, 579 (Iowa 1996) (discussing a plaintiff's challenge to the arbitrator's potential bias and noting "[plaintiff] was offered an opportunity at the arbitration hearing to lodge objection to any of the arbitrators and declined to do so"). Sellers was able to waive his objection to Weinhardt's evident partiality and did so.

Here, not only was Sellers already on notice of Weinhardt's involvement in the Dr. P case, but Weinhardt disclosed as much before the arbitration hearing. Sellers waived any concern. Without any proven indication that Weinhardt's alleged bias influenced his own findings or those of his panel members, we will not vacate the award due to his involvement. *See id.* at 578–79 ("We find no reason in the present case to set aside a decision of an arbitration panel issued after hearing substantial evidence and a lengthy deliberation process unless it is shown that the third arbitrator was in fact biased. No such showing has been made.")

**2. Whether Arbitration Committee Exceeded Authority by Deciding Substantive Representation Issue.**

Sellers's second challenge is that the findings regarding his inadequate representation of Gupta go beyond the scope of the Arbitration Committee's power. "If an issue is beyond the scope of arbitration and the arbitrators have exceeded their powers in addressing it, this is a ground for vacation of the award." *LCI, Inc. v. Chipman*, 572 N.W.2d 158, 159 (Iowa 1997). Still, "[a]n order to

arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* at 160 (citation omitted) (extending this federal standard to arbitrations under Iowa Code chapter 679A). Therefore, we turn to the rules both Sellers and Gupta agreed to when submitting their dispute to the Arbitration Committee.

Sellers asserts "the [Arbitration Committee's] purpose is to arbitrate fee disputes pursuant to a fee contract. It does not contemplate peering into the substantive representation of an individual—but rather whether an attorney is observing a fee agreement and engaging in unethical or improper billing practices." He argues this substantive review of the attorney's work is more akin to legal malpractice action than a fee dispute and is outside the purview of the Arbitration Committee.

The Arbitration Committee's rules state that it arbitrates "disputes concerning attorney fees and billing practices." The parties, before entering binding arbitration, are required to sign a stipulation that "there is a dispute between them concerning attorney fees and billing practices." Further, the rules dictate that:

> If the [Arbitration Committee] finds that there is a valid and reasonable fee contract, this shall govern; otherwise, the Committee shall determine what is a reasonable fee under all the circumstances presented. The [Arbitration Committee] shall have the ability to modify a fee contract if it is found to be unreasonable, inequitable or if the evidence at the hearing establishes that the client was not fully informed, was coerced, or otherwise treated improperly in entering into a fee contract.

The Arbitration Committee, then, is tasked with determining if there is a valid and *reasonable* fee contract. This means the existence of the fee contract alone is not sufficient; rather, the Arbitration Committee is allowed to hear evidence to determine if that contract was unreasonable, inequitable, or if the client was treated fairly in entering into it. In its ruling, the Arbitration Committee stated it reviewed the provided documents, which included the executed fee contracts, and found these fee arrangements were neither reasonable nor equitable when viewed against the work accomplished. More specifically, it found that Sellers's experience did not warrant his hourly rate and that he misrepresented to Gupta from the onset the necessity and likelihood of succeeding in trying to vacate his criminal misdemeanor conviction. Because of these findings, the Arbitration Committee was free to break from the fee agreements and determine what the reasonable fee was given "all of the circumstances"—because this broad language gives the Arbitration Committee the leeway to evaluate the substantive quality and necessity of the legal work provided and determine its value. It is not our job to say that the arbitrators were correct, *see Ales*, 728 N.W.2d at 839, so we will not second guess the Arbitration Committee's wisdom here.[13] *See* Iowa Code § 679A.12(2) ("The fact that the relief awarded could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."). Instead, we merely ensure they acted within their own rules as the parties agreed to them.

---

[13] Sellers offers two additional arguments in his brief, questioning the Arbitration Committee's expertise and fact-finding. We note once more that this is beyond the scope of our review. *See Ales*, 728 N.W.2d at 839.

In conjunction with this argument, Sellers makes a passing reference that the Arbitration Committee's rules are coercive because, if the attorney does not agree to arbitration, the case is routed to the Polk County Grievance Committee. We do not address this, both because it is not a ground to vacate under section 679A.12(1) and because the argument has not been developed or supported with authority. *See* Iowa R. App. P. 6.903(2)(g)(3); *see also DLR Grp., Inc. v. Oskaloosa Cmty. Sch. Dist.*, No. 15-0356, 2016 WL 531824, at *6 (Iowa Ct. App. Feb. 10, 2016).

As the Arbitration Committee did not exceed its powers, we find no such reason to vacate the arbitration award.

**3. Prejudgment Interest.**

We turn now to the first of Gupta's challenges from his cross-appeal—that the district court should have imposed prejudgment interest. In its order, the district court noted that Gupta had requested prejudgment interest as allowed by Iowa Code section 668.13, which concerns comparative fault and liability in tort claims. But, that section does not control in the appeal at hand taken under chapter 679A. Gupta has provided no argument to tie his request for prejudgment interest award to a tort claim. Thus, we affirm the district court's finding that there was no authority under chapter 679A for it to grant prejudgment interest in this contract dispute.

**4. Attorney Fees and Costs.**

Gupta's final cross-appeal concerns the award of attorney fees and costs, which he requested from the district court and was denied. Section 679A.14 gives the district court the discretion to award the "[c]osts of the application and subsequent proceedings and disbursements" after an award has been confirmed,

corrected, or modified. But, the district court is not mandated to do so. The district court here noted Gupta had proceeded pro se and so did not have attorney fees to be awarded. Gupta rightly points out that he did, in fact, have limited assistance from an attorney who filed the initial December 2019 motion to confirm the arbitration award, though this was before Sellers filed a motion to vacate. Still, the district court correctly noted a second hurdle: section 679A.14 allows for the court's discretion in awarding costs but not attorney fees.

Even if we considered attorney fees part of the costs allowed for in section 679A.14, the section leaves such an award to the discretion of the court. Here, though the court had discretion to award costs to Gupta, it stated it "decline[d] to do so [because it] would be unreasonable under the record presented." "We review challenges to exercises of such discretion for abuse of discretion, which is the same standard we use for the district court's determination of the amount of fees awarded." *Guge v. Kassel Enters., Inc.*, 962 N.W.2d 764, 777 (Iowa 2021) (reviewing the award of fees and expenses under a different code section that allows for costs to be awarded at the court's discretion). We only alter these discretionary rulings when they are made based "on grounds that are clearly unreasonable or untenable." *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 469 (Iowa 2010). Gupta points us to nothing unreasonable or untenable in the court's decision, nor do we find it ourselves. Finding no abuse of discretion, we affirm the district court's decision not to award Gupta attorney fees or costs.

**Conclusion.**

Because Sellers waived his objection to Weinhardt's presence on the arbitration panel and the Arbitration Committee remained within its proper scope, and because Gupta had no statutory path for prejudgment interest and the court did not abuse its discretion by declining to award attorney fees and costs, we affirm the district court's ruling.

**AFFIRMED.**